UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.: 17-mj-02236-MBB |
| | ) | |
| JEAN LEONARD TEGANYA | ) | |

## DEFENDANT'S MOTION FOR RELEASE WITH CONDITIONS

The Defendant, Jean Leonard Teganya, respectfully requests that the Court release him with appropriate conditions, including but not limited to:

(1) The posting of a secured bond in the range of five thousand to ten thousand dollars, which Mr. Teganya's family and friends expect to be able to post within a matter of days;[1]

(2) Electronic monitoring;

(3) The restriction of his travels to the District of Massachusetts;

(4) Continued full-time employment;

(5) Reporting to the Office of Pretrial Services as directed.

Moreover, should the Court deem it appropriate, a potential third-party custodian within this District exists.   See attached Affidavit of Basile Basina.   The Defendant would be amenable to being placed into custody of Mr. Basina, who now resides at 140 Rock Street, Apt. 3, in Fall River.

---

[1] It should be noted that a secured bond has already proven to be an effective means of assuring Mr. Teganya's presence at related proceedings in Immigration Court.   Following the decision of a United States Immigration Judge setting a secured bond in the amount of $12,000, Mr. Teganya has been at liberty uneventfully for nearly three years during the pendency of his asylum claim.   See attached Memorandum Concerning the September 16, 2014 Decision of the Immigration Court.   See also attached Affidavit of Gregory Meyer in Support of Bond Request.

**BACKGROUND**

Jean Teganya, like so many from his native country, has struggled for over twenty years to build a life for himself in the aftermath of the Rwandan genocide. Born in Rwanda to a Tutsi mother and Hutu father, he graduated high school from a religious boarding school and pursued a medical education at the National University of Rwanda in Butare. Eric Nshimiye, a friend from this period of his life, recalls that Mr. Teganya "didn't get involved in politics" and was "known to get along well with everybody." See attached letter of Eric Nshimiye. Another friend from the university, Marcel Munyanziza, has written that they became friends because they had much in common, such as "taking school seriously, honesty, [and] being disciplined and reliable." See attached letter of Marcel Munyanziza. As conflict enveloped the region in April of 1994, Mr. Teganya remained in Butare working at the local hospital, which was overwhelmed with the injured. A fellow medical student, now a doctor practicing in France, has written:

> "During all the time we were together (day and night everyday), I never saw Mr. Teganya behave inappropriately towards the patients that we cared for or towards people we came across outside the hospital, including university students of the Tutsi ethnic group and had been hunted down by the killers. I never heard Mr. Teganya hold hateful speech or threats towards anyone. On the contrary, he condemned with determination everything that was happening in the country."

See attached letter of Aimable Rwabukumba.

In June 1994, the fighting around Butare intensified and Mr. Teganya fled, as did many others in the city. He spent the next three years in refugee camps, both in Congo and Kenya. In 1999, he was able to obtain a graduate degree in economics from a university in India. This opportunity was afforded to him by an Ohio non-profit called RwandaHope; the pastor who led that group, Leonard Uwiringiylmana, has written that he was "impressed that he [Mr. Teganya] remained focused on his studies," eventually completing the 2 year degree in only 18 months.

See attached Letter of Leonard Uwiringiylmana.

After completing his graduate degree in India, Mr. Teganya sought asylum in Canada. He did so because he could not return to Rwanda for fear of imprisonment and violence. In 1997, Mr. Teganya's father (who also bears the name Jean Teganya) was arrested in Rwanda and charged with war crimes for his role as a leader in the MRND party. Mr. Teganya believed (and still believes) that if he were to appear in Rwanda, he would be persecuted and could not receive a fair trial. This concern is well founded. Boston University Professor Timothy Longman, who the Government has identified as "preeminent historian of the Rwandan genocide and [who] did extensive field work in Butare both before and after the genocide," has in fact examined Mr. Teganya's claims and come to the same conclusion. According to Professor Longman:

> "Mr. Teganya would be in real danger if forced to return to Rwanda. Because he was a medical student at Butare Hospital during part of the genocide and because of his father's conviction in the *gacaca* court, the Rwandan government will consider him a genocide accomplice and will seek to convict and punish him. Because he has been outside of Rwanda for so long and because his case has received considerable international attention, he will be denied the opportunity for a fair trial."

See Affidavit of Professor Timothy Longman. Professor Longman has also opined that "Mr. Teganya's personal account as a Rwandan who lived through the 1994 genocide is consistent with what I understand of the realities of Rwanda's complex ethnic politics and history." Id.

Upon arriving in Canada, Mr. Teganya immediately declared his identity and requested asylum. Over the course of the next 15 years, Mr. Teganya pressed that claim through Canadian courts. Ultimately, his asylum claim was denied after the reviewing body found that he had been "complicit" in the atrocities taking place in Butare. This determination was not reached on the basis of any evidence that Mr. Teganya had directly participated in violence, but rather "[t]he fact that the Applicant [Mr. Teganya] was left unscathed was conceived by the RPD [the body

charged with reviewing Teganya's asylum application] to have demonstrated that the Applicant had been considered to be an extremist." See attached "Reasons for Order and Order."

By the time he had exhausted his remedies in the Canadian courts, Mr. Teganya had been at liberty in Canada for approximately fifteen years without incident. He had committed no crimes. He had married and fathered two children, who are now ages 8 and 10. He had long held gainful employment and was active in his local religious community. Yet he was compelled to flee to the United States for the same reasons that had taken him to Canada. Had he not done so, he would have been returned to Rwanda and faced the threat of imprisonment, violence, and death. So it was that in August 2014, he declared himself to border officials in Maine and sought asylum.

In September 2014, an Immigration Judge set a secured bond in the amount of $12,000 and Mr. Teganya was released. Since that time, he has managed to establish firm roots in the community. Mr. Teganya holds full-time employment at a scientific support community and is able to financially support himself. He resides in Revere, where he is an active member of the Immaculate Conception Parish. See attached Letter of Rev. Jorge Daniel Lazo. He is also an active member of the Revere chapter of the Knights of Columbus. See attached Letter of John J. Verrengia. And while he is no longer able to see his wife and children as often as might wish to, residing in this area allows his family (who live in Quebec) to visit him with some frequency.

In sum, Mr. Teganya has done everything in his power to build a life for himself in this area. Notably, there have been no issues with his appearance in immigration court. Mr. Teganya's life is here and he has nowhere else to go. The United States of America is his last, best hope of avoiding persecution in his homeland.

## THE BAIL REFORM ACT

Under the provisions of 18 U.S.C. § 3142 ("The Bail Reform Act"), the judicial officer shall order that, pending trial, the defendant either be (1) released on his or her own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation or exclusion; or (4) detained.  See 18 U.S.C. § 3142(a).

Under § 3142(e), a defendant may be ordered detained pending trial only if the judicial officer finds by clear and convincing evidence after a detention hearing "that no condition or combination of conditions (set forth under § 3142(b) or (c)) will reasonably assure the safety of any other person or the community . . . ," or if the judicial officer finds by a preponderance of the evidence after a detention hearing "that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, or whether pretrial detention is warranted, the judicial officer must take into account and weigh information concerning --

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;

(2) the weight of the evidence against the accused;

(3) the history and characteristics of the person, including --

(a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

    community ties, past conduct, history relating to drug or alcohol abuse, criminal

    history, and record concerning appearance at court proceedings; and

    (b) whether, at the time of the current offense or arrest, the defendant was on

    probation, on parole, or other release pending trial, sentencing, appeal, or

    completion of sentence for an offense under federal, state or local law; and

(4) the nature and seriousness of the danger to any other person or the community that

would be posed by the person's release.

See 18 U.S.C. § 3142(g).

## DISCUSSION

  The Defendant respectfully suggests that a careful examination of the factors enumerated in § 3142(g) weigh in favor of release. These factors can be addressed as follows.

1. *The Nature and Circumstances of the Offense Charged:* the offenses charged are non-violent and do not fall into the other categories listed.

2. *The Weight of the Evidence Against the Accused:* while a detention hearing is not the appropriate forum to try the case, the defense would suggest that the Government will face substantial hurdles in carrying their burden here. Essentially, the Government has alleged that Mr. Teganya's statements on his asylum application were false and perjuries because he failed to admit his membership and participation in Hutu organizations active at the time of the genocide. Therefore the Government must prove that he was engaged in those activities, during a chaotic period of Rwandan history over twenty years ago. To date, the Government has not identified to the defense the witnesses or evidence supporting their allegations. However, attached to this petition are statements from several persons who associated with Mr. Teganya during the relevant time period. The statements of these witnesses rebut the

Government's case.  At a minimum, the Court should recognize that the weight of the evidence in this case is far from overwhelming and will be vigorously challenged.

3. *The History and Characteristics of the Person:* the attachments to this memorandum uniformly describe a person of strong moral character.  Moreover, Mr. Teganya has no criminal history whatsoever.  Since an Immigration Judge saw fit to release him on bond, he has thrived: obtaining employment, stable housing, and establishing community ties.  Consideration of this factor weighs in favor of release.

4. *Nature and Seriousness of Danger:* there is no evidence that release of the defendant would endanger any one.  Consideration of this factor also weighs in favor of release.

## CONCLUSION

For all the foregoing reasons, Jean Leonard Teganya asserts that the conditions of release proposed herein will reasonably assure his appearance at future proceedings and therefore requests that the Court adopt those conditions, as well as any additional reasonable conditions deemed necessary by the Court.

> Respectfully submitted,
> */s/ Scott Lauer*
> Scott Lauer,
>     B.B.O.: 667807
> Assistant Federal Public Defender
> Federal Public Defender Office
> 51 Sleeper Street, 5th Floor
> Boston, MA   02210
> Tel: 617-223-8061

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 9, 2017.

> */s/ Scott Lauer*
> Scott Lauer