UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BOSTON, MASSACHUSETTS

IN THE MATTER OF:

| | | |
|---|---|---|
| TEGANYA, Jean Leonard | ) | In Bond Proceedings |
| A 098-301-881 | ) | **DETAINED** |
| | ) | |
| **Respondent** | ) | |

**CHARGE:** Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA or Act): Alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

**APPLICATION:** Motion for Custody Redetermination

| **ON BEHALF OF RESPONDENT** | **ON BEHALF OF DHS** |
|---|---|
| David K. McHaffey, Esq. | Assistant Chief Counsel |
| Barker, Epstein, Loscocco & McHaffey | Office of the Chief Counsel |
| 10 Winthrop Square, 2nd Floor | 15 New Sudbury Street, Room 425 |
| Boston, MA 02110 | Boston, Massachusetts 02203 |

**MEMORANDUM CONCERNING THE
SEPTEMBER 16, 2014, DECISION OF THE IMMIGRATION COURT**

This memorandum, submitted pursuant to section 1236.1(d) of Title 8, Code of Federal Regulations, provides reasons why the Immigration Court granted the Respondent's request for a change in his custody status and ordered that the Respondent be released from custody under a bond of $12,000.

**I.   Procedural History**

The Respondent, Jean Leonard Teganya, is the subject of a Notice to Appear (NTA), issued by the Department of Homeland Security (DHS) on August 3, 2014, alleging that he (1) is not a citizen or national of the United States; (2) is a native and citizen of Rwanda; (3) arrived in the United States at an unknown place on or about August 3, 2014; and (4) was not, at that time, admitted or paroled into the United States by an Immigration Officer. Form I-862, Notice to Appear (August 3, 2014). Accordingly, the NTA charges the Respondent as removable from the United States pursuant to section 212(a)(6)(A)(i) of that Act. *Id.* The NTA orders the Respondent to appear at the Boston Immigration Court (Court) to show why he should not be removed from the United States based on this charge. *Id.*

On August 3, 2014, DHS determined that the Respondent should remain detained throughout the duration of his removal proceedings. Form I-286, Notice of Custody Determination (August 3, 2014). The Respondent requested that an Immigration Judge redetermine DHS's custody decision. *Id.*

Pursuant to the Respondent's request, the Court conducted a custody redetermination hearing in the Respondent's case on September 16, 2014.

## II. Applicable Law

### A. Custody Redetermination

Section 236(c)(1) of the Act provides that the Attorney General shall take into custody any alien who: (A) is inadmissible by reason of having committed any offense covered in section 212(a)(2); (B) is deportable by reason of having committed any offense covered in sections 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D); (C) is deportable under section 237(a)(2)(A)(i) on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least one year; or (D) is inadmissible under section 212(a)(3)(B) or deportable under section 237(a)(4)(B), when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense. INA § 236(c) (2014).

When an alien is not described in section 236(c)(1) of the Act, the Court has jurisdiction to exercise its discretion by either: (1) continuing to detain the alien; or (2) releasing the alien on either a bond of not less than $1,500.00 or conditional parole. *See* INA § 236(a). The alien bears the burden of demonstrating to the satisfaction of the Court that he does not pose a danger to persons or property, is not a threat to national security, and does not pose a flight risk. *See Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); *see also* 8 C.F.R. § 1236.1(c)(8) (2014). The Immigration Judge should consider the flight risk an alien poses only if the alien demonstrates that he does not pose a danger to the community. *Matter of Urena*, 25 I&N Dec. 140, 141 (BIA 2009).

The Board has consistently held that the following factors are significant in a custody redetermination:

1. Fixed address in the United States. *Mater of Patel*, 15 I&N Dec. 666, 667 (BIA 1976);
2. Length of residence in the United States. *Matter of Shaw*, 17 I&N Dec. 177, 178 (BIA 1979);
3. Family ties in the United States, particularly those which can confer immigration benefits on the alien. *Matter of Shaw*, 17 I&N Dec. at 178; *Matter of Patel*, 15 I&N Dec. at 667;
4. Employment history in the United States, including length and stability. *Shaw*, 17 I&N Dec. at 178; *Matter of Patel*, 15 I&N Dec. at 667;
5. Immigration record. *Matter of Shaw*, 17 I&N Dec. at 178; *Matter of San Martin*, 15 I&N Dec. 167, 169 (BIA 1974); *Matter of Moise*, 12 I&N Dec. 102, 104 (BIA 1967);
6. Attempts to escape from authorities or other flight to avoid prosecution. *Matter of*

2

> *San Martin*, 15 I&N Dec. at 169.
7. Prior failures to appear for scheduled court proceedings. *Matter of Shaw*, 17 I&N Dec. at 178; *Matter of San Martin*, 15 I&N Dec. at 169; and
8. Criminal record, including extensiveness and recency, indicating consistent disrespect for the law and ineligibility for relief from deportation/removal. *Matter of Andrade*, 19 I&N Dec. 488, 490–91 (BIA 1987).

The Court's determination as to custody status or bond may be based upon any information that is available or that is presented by the Respondent or DHS. 8 C.F.R. § 1003.19(d). It is the responsibility of the Court and parties to ensure that the Bond Record establishes the nature and substance of the specific factual information considered in reaching the bond determination. *Matter of Adeniji*, 22 I&N Dec. 1102, 1102 (BIA 1999).

## III.   Findings of Fact and Conclusions of Law

The Respondent has satisfied the Court that he does not pose a danger to persons or property. *See Matter of Guerra*, 24 I&N Dec. at 40; *see also* 8 C.F.R. § 1236.1(c)(8). At his September 16, 2014, custody hearing, the Respondent testified that he left Rwanda in 1994, and lived in several countries; including the Democratic Republic of the Congo, Kenya, India, and Canada; before entering the United States in August 2014. The Bond Record reflects that the Respondent has no criminal record in these countries, most notably, Canada, where the Respondent resided between 1999 and August 2014. *See* Form I-862, Notice to Appear (August 3, 2014); Bond Exh. 7; *see also Matter of Andrade*, 19 I&N Dec. at 490-91.[1] The Respondent also submitted multiple letters and affidavits from friends and colleagues attesting to his good character. *See generally* Bond Exh. 1, Tabs E-H; Bond Exh. 2; Bond Exh. 3; Bond Exh. 4. These letters and affidavits include statements from individuals, all of whom have known the Respondent for ten years or longer that the Respondent "is a good person and a peaceful kind man," Bond Exh. 2; "would be a very positive and productive member of our society," Bond Exh. 1, Tab F, p. 11; "is a harmless person," Bond Exh. 1, Tab G, p. 12; "is a loving father . . . a peaceful, law-abiding person and [a] hard worker," Bond Exh. 1, Tab H, p. 13; and "is a person very involved in many Christian communities [who is] very caring with people skills," Bond Exh. 1, Tab I, p. 14.

DHS argues that the Respondent is dangerous. In support of this argument, DHS cites an October 2012 Canadian federal court decision, which concludes that the Respondent was at least complicit in acts of genocide at Butare Hospital in Rwanda between April and June 1994, when the Respondent was a medical student intern at the hospital. *See* Bond Exh. 7. This decision affirms a September 2005 Canadian Immigration and Refugee Board decision denying the Respondent refugee status and ordering him removed from Canada on this basis. *Id.* At his September 16, 2014, custody hearing, the Respondent admitted to being an intern at Butare Hospital between April and July 1994. He claimed that as a junior medical student, he was not

---

[1] The Bond Record also reflects that the Respondent has no criminal record in the United States. The Court affords this fact little weight, however, because DHS apprehended the Respondent soon after he crossed into the United States from Canada in August 2014. *See* Bond Exh. 5, p. 7. At the time of his September 2, 2014, custody hearing, the Respondent remained in immigration detention. *See* Form I-286, Notice of Custody Determination (August 3, 2014).

3

allowed to perform 'medical acts,' and only assisted doctors and senior medical students, such as by handing them surgical instruments. The Respondent also maintained that while he was aware soldiers and paramilitary personnel were patients at the hospital, he was not aware that acts of genocide were committed in the hospital. The Court finds these details primarily relevant to the Respondent's eligibility for relief. While they are not completely irrelevant to the issue of dangerousness, the Court is satisfied by the totality of the evidence, considered in light of the Respondent's testimony, that the Respondent does not represent a present danger to persons or property.

Because the Court is satisfied that the Respondent is not a danger to the community, the Court will proceed to address the issue of flight risk. *Matter of Urena*, 25 I&N Dec. at 141.

The Court finds that the Respondent poses a severe risk of flight. After Canadian immigration authorities ordered the Respondent's removal from Canada, the Respondent fled Canada and illegally crossed into the United States in August 2014. *See* Bond Exh. 5, p. 7; Bond Exh. 6; *see also Matter of Shaw*, 17 I&N Dec. at 178; *Matter of San Martin*, 15 I&N Dec. at 167, 169. Moreover, the Respondent fled Canada despite indicia that he did not pose a flight risk, namely the fact that in August 2014, he had lived in Canada for fifteen years, and the fact that his wife and two children currently reside in Canada.

The Respondent offered evidence to minimize the seriousness of the flight risk he poses. The Respondent contended that he fled Canada to avoid removal to Rwanda, where he is afraid to return. He further asserted that he has a strong incentive to pursue his claim for asylum before the Court, as he views winning asylum in the United States as his "last chance" to avoid removal to Rwanda. However, these claims do not satisfy the Court that the Respondent does not pose a significant flight risk. Due to the potential 'persecutor bar' issues alluded to above, the Respondent does not appear to have a particularly strong asylum case. *See Matter of Andrade*, 19 I&N Dec. at 490-91. Moreover, the Respondent's flight from Canada in the face of removal shows that, should the Respondent think at any time during his proceedings that removal is the likely result, he may abscond to avoid removal.

Based on the Court's foregoing conclusion that the Respondent represents a severe flight risk, the Court will set a bond in the amount of $12,000 in an effort to ensure the Respondent's appearance at future proceedings.

December 9, 2014
Date

**STEVEN F. DAY**
United States Immigration Judge

4