UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. 17-CR-10292-FDS |
| v. ) | |
| ) | |
| JEAN LEONARD TEGANYA ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant, Jean Leonard Teganya, was charged via a five-count indictment with immigration fraud and perjury. The nature of the crime alleged was that he had concealed his membership in a certain political party (the MRND) in power at the time of the 1994 genocide, as well as his participation in genocidal violence occurring at the Butare hospital. At trial, Mr. Teganya testified that he neither belonged to the MRND political party, nor participated in any acts of violence. Numerous other Rwandans familiar with Mr. Teganya during the operative time period agreed and testified in his defense. Nevertheless, the jury returned guilty verdicts on April 5, 2019 and he now faces sentencing. For having the temerity to maintain his innocence and present a defense, the Government now alleges that he obstructed justice and is deserving of twenty years in prison, a term far in excess of the applicable Guidelines sentencing range. This request should be rejected.

Instead, the Defendant submits that the Court should sentence him to a within-Guidelines period of 63 months imprisonment. The applicable guideline (2L2.2) contemplates the very nature of this offense—the concealment of one's participation in a serious human rights offense—and provides for a dramatic increase in the offense level to account for its severity. To the extent that the jury's verdict may be taken as a finding that Teganya personally committed genocidal acts, accountability for that conduct should occur in a court of competent jurisdiction.

Indeed, when Teganya has completed his sentence as to this offense, he will undoubtedly be removed to Rwanda to face further prosecution.

## GUIDELINES CALCULATION

The Defendant concurs in the calculation of the sentencing range as set forth in the presence report. The total offense level is 26 and the Criminal History Category is I, producing an advisory sentencing range of 63-78 months. Notably, the offense level is largely a product of § 2L2.2(b)(4)(B)(ii), which provides for an increase from a base offense level of 8 to an offense level of 25 if "the defendant committed any part of the instant offense to conceal the defendant's participation in… any other serious human rights offense." This provision was added by the Commission in 2012 in order to "reflect[] the impact that such immigration fraud offenses can have on the ability of immigration and naturalization authorities to make fully informed decisions regarding the defendant's immigration petition, application or other request and is intended to ensure that the United States is not a safe haven for those who have committed serious human rights offenses."[1]

## OBSTRUCTION OF JUSTICE

The Government argues that the Court should upwardly adjust the offense level by 2 levels under USSG § 3C1.1 because Teganya obstructed justice by (1) perjuring himself, and (2) suborning the perjury of Aimable Rwabakumba. In sum and substance, the thrust of Rwabakumba's testimony was that he was friendly with Teganya, his fellow medical student, and worked together with him at the Butare hospital during the genocide. Rwamakumba did not know Teganya to be a member of the MRND, nor did he see Teganya commit any acts of

---

[1] https://guidelines.ussc.gov/ac/765

violence at the hospital.   The Government has made no showing that this was perjurious or that Teganya suborned it.   Obstruction of justice does not occur simply because a defendant presents a witness with favorable testimony, even though it may be rejected by the factfinder.   Similarly, as to Teganya's testimony, a sentencing may not make an obstruction finding "because an evidentiary conflict exists or because the jury rejects the defendant's explanation of the facts and finds him guilty." *United States v. Gobbi*, 471 F.3d 302, 314 (1st Cir. 2006), citing *United States v. Akitoye*, 923 F.2d 221, 228-29 (1st Cir. 1991).

## UPWARD DEPARTURE FOR INADEQUACY OF CRIMINAL HISTORY

The Government has moved for an upward departure pursuant to USSG § 4A1.3 based on the inadequacy of his criminal history score, arguing that it "does not reflect the significant criminal conduct that he committed during the genocide, for which the jury necessarily found him guilty."   *Govt. Sentencing Memo*  at 15.   The jury did no such thing.   The verdicts returned by the jury were general and did not include any findings as to the specific criminal acts triggering the government's motion for an upward departure.   Moreover, to upwardly depart under § 4A1.3 would result in a form of double-counting.   USSG § 2L2.2(b)(4) already provides for a drastic escalation in punishment on the basis of a defendant's participation in human rights offenses.   There is no under-representation of that conduct and a departure is therefore unwarranted.

The government also cites other instances of Teganya's alleged criminal history that are not represented, including (1) entering Canada through the use of a false passport, (2) lies to Canadian authorities, (3) avoidance of removal from Canada, (4) flight from Canada to the United States, and (5) illegal entry into the United States.   *Govt. Sentencing Memorandum* at 15-

16. The Government does not identify what crimes these acts constitute or the potential penalties attendant thereto, perhaps because it is far from clear that they are criminal. The only readily identifiable crime under United States law is Teganya's illegal entry into the United States, a violation of 8 U.S.C. § 1325, a misdemeanor offense for first-time offenders punishable by a maximum of six months imprisonment.

<u>REQUEST FOR UPWARD DEPARTURE TO 240 MONTHS IMPRISONMENT</u>

The Government calculates the applicable sentencing range under the Guidelines to be 140-175 months but nonetheless seeks an aggregate 240 month sentence, either as an upward departure under USSG §5K2.0 or a variance under 18 U.S.C. 3553(a). Of course, such a departure is warranted only if there are circumstances not adequately taken into consideration by the Sentencing Commission. That is plainly not the case here. USSG § 2L2.2(b)(4) was enacted quite purposefully to provide heightened punishment for immigration offenses involving a defendant's concealment of participation in serious human rights offenses. Indeed, the Government's own rhetoric in support of their position—that persecutors must be put on notice that they will not find "safe haven" in the United States—echoes the language of the Comission that § 2L2.2(b)(4) "is intended to ensure that the United States is not a safe haven for those who have committed serious human rights offenses." It cannot be said that the Commission failed to take into consideration the circumstances presented by this case in formulating § 2L2.2(b)(4). Just the opposite, § 2L2.2(b)(4) was enacted precisely to insure adequate punishment for this type of case.

## RECOMMENDATION

In the ordinary case, undersigned counsel would include a detailed personal history of the defendant for purposes of 18 U.S.C. § 3553(a).  Given that this case was a lengthy trial involving a tremendous amount of detail concerning Teganya's personal history, it is unnecessary to do so here.  Suffice it to say that the Government's evidence regarding who Jean Leonard Teganya was in 1994 bears little resemblance to the Jean Leonard Teganya known by many before and since.

Over the past 25 years, Teganya has led a quiet and unassuming life.  He has relentlessly sought to better himself through education and has a strong work history.  He is married and has two children.  His wife, Nicole Gahamanyi, describes him as a "role model" and writes of the hardships his sons endure in his absence.  He is religious and has been active in his local parishes.  Two volunteers at a Catholic discussion group at the Plymouth County jail have seen fit to submit letters of support on his behalf.  His uncle, Greg Meyer, also has submitted a letter about the Jean Leonard Teganya that he knows, concluding that "given the chance to live freely, Jean Leonard would make a very positive contribution to society."

In light of the jury's verdict, Meyer's hope for his nephew will not be possible.  Even after his sentence on this case is complete, Teganya will be removed and prosecuted once more in Rwanda.  Perhaps when that occurs, he will be imprisoned for twenty years or more.  In keeping with traditional notions of venue and localized justice, that would be the appropriate forum for him to be sentenced for events occurring in Butare in 1994.  But a sentence of twenty years is wildly excessive for the offenses of conviction here.  Such a sentence would also represent an affront to the considered judgment of the Sentencing Commission as expressed

through the applicable Guideline.   Teganya submits that the Court should impose a 63 month sentence, representing the low end of the sentencing range as determined in the presentence report.   He also requests that the Court make a judicial recommendation that he serve his sentence at FCI-Berlin, as this location would facilitate regular visitation from his wife and children.

                                         Respectfully submitted,

                                         JEAN LEONARD TEGANYA
                                         by his attorney
                                         */s/ Scott Lauer*
                                         Scott Lauer (BBO #667807)
                                         FEDERAL PUBLIC DEFENDER OFFICE
                                         51 Sleeper Street, 5th Floor
                                         Boston, MA 02210
                                         617-223-8061 (phone)
                                         617-223-8080 (fax)
                                         Scott_Lauer@fd.org

## **CERTIFICATE OF SERVICE**

     I, Scott Lauer, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF), on June 28, 2019.

                                         */s/ Scott Lauer*
                                         Scott Lauer